# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | |
|---|---|
| **R.C., Individually and As Parent and Next Friend of D.C.,**<br><br>Plaintiffs<br><br>v.<br><br>**MONTICELLO SCHOOL DISTRICT,**<br><br>Defendant | **CASE NO. 4:20CV00794-JM** |

## FIRST AMENDED COMPLAINT

R.C., Individually, and as Parent and Next Friend of D.C. ("D.C.") for his Complaint states:

### INTRODUCTION

1. Parent filed a Due Process Complaint with the Arkansas Department of Education ("ADE") pursuant to the Individuals with Disabilities Education Act ("IDEA") against the Monticello School District ("District") alleging the District failed to provide D.C. an appropriate individualized

education program ("IEP") and denied D.C. a free appropriate public education ("FAPE").

2. An ADE impartial hearing officer ("HO") issued a final order on February 24, 2020. The HO found that D.C.'s IEPs were inappropriate and that the District denied D.C. a FAPE between August 12, 2017 to August 12, 2019. The HO awarded Parent substantial relief. As the prevailing party, Parent brings this action to recover his attorneys' fees and costs. *See* 20 U.S.C. §1415(i)(3).

3. In finding for the Parent, the HO made findings of fact establishing the District acted in bad faith and with deliberate indifference in denying D.C. and Parent their rights under the IDEA. Moreover, the District committed disability discrimination by retaliating against Parent for his advocacy on behalf of D.C. Accordingly, Parent also brings this action to recover for the District's disability discrimination pursuant to §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) ("§504"), and Title II of the Americans' with Disabilities Act, 42 U.S.C. §12131-12165 ("Title II").

4. R.C. brings this case individually on his own behalf and on D.C.'s behalf. *See* Fed. R. Civ. P. 17(2).

5. D.C. is a nonverbal autistic child (DOB: 04-01-10) who was a nine (9) year old third grade student at the "Consortium" school when this

controversy began on 21 May 2019. D.C. is now preparing to start the fifth grade and remains in the Consortium school without OT.

6. Although Parent has at all times resided in the Monticello School District, the District predetermined that D.C. would be placed in the "Consortium" - a prefab metal building located on the campus of another school district. Upon information and belief, the Consortium "warehouses" disabled students in preschool through 5th grade. In this environment D.C. is denied any interaction with non disabled peers, denied participation of any kind with same aged peers attending school in the District; and is denied courses, services, and experiences otherwise provided to his disabled and/or non-disabled peers attending schools in the District.

7. The Monticello School District ("District") is an Arkansas school district and a public corporation that may be sued in its own name. *See* Ark. Code Ann. §6-13-102(a). Arkansas school districts are not state agencies immune from suit pursuant to the Eleventh Amendment. *Herts v. Smith*, 345 F.3d 581, 588 (8th Cir. 2003).

## JURISDICTION AND VENUE

8. This Court has jurisdiction of Parent's claim for attorneys' fees and costs pursuant to 20 U.S.C. §1415(i)(3).

9.     This Court has jurisdiction of Parent's §504 and Title II claims pursuant to 28 U.S.C. §1331 and §1343(a).

10.    This Court is the proper venue for Parent's claims. *See* 28 U.S.C. §1391(b). Parent resides in Drew County, Arkansas. The Monticello School District is located in Drew County. The events giving rise to Parent's Complaint occurred in Drew County. Drew County is in the Eastern District of Arkansas, Central Division. *See* 28 U.S.C. §83.

## COUNT I

## IDEA ATTORNEYS' FEES AND COSTS

11.    Parent is the prevailing party in an action or proceeding under the IDEA and may be awarded reasonable attorneys' fees and costs. *See* 20 U.S.C. §1415(i)(3)(B)(i).

12.    The District's time to appeal the HO Order expired on 24 May 2020, 90 days from entry of the HO Order. *See* 20 U.S.C. §1415(i)(2)(A). No appeal has been filed. Accordingly, Parent's claim for attorneys' fees and costs is ripe. *See Brittany O v. Bentonville Sch. Dist.*, 683 Fed. Appx. 556, 558 (8th Cir. 2017) (per curiam)

13.    Parent will move for summary judgment on his claim for attorneys' fees and costs at the appropriate time, and at that time, provide the Court an declaration setting out the time spent and factual matters pertaining to

Parent's claim for attorneys' and costs. *See* Fed. R. Civ. P. 56(b) (time to file motion for summary judgment).

## COUNT II

## DISABILITY DISCRIMINATION

14. The enforcement, remedies, and rights are the same under §504 and Title II. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir.2000).

15. D.C. is a qualified individual with a disability.

16. The District is a public entity receiving federal funds.

17. The District discriminated against D.C. solely on the basis of his disability.

18. The District harmed D.C. in bad faith or with gross misjudgment by departing so substantially from accepted professional judgment, practice or standards as to demonstrate that the District acted with wrongful intent. *See, e.g., M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982 (8th Cir. 2003) (finding bad faith where District misled parent).

19. The District's decision to continue to implement IEPs that it knew would likely result in a violation of D.C.'s federally protected right to a FAPE creates an inference that the District acted with deliberate indifference. *See Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011).

20. The HO's order is attached hereto as **Exhibit A** and hereby incorporated by reference.

21. The District's bad faith/deliberate indifference is evidenced by the District's arbitrary decision to terminate D.C.'s occupational therapy ("OT") without evaluating him. The District told Parent it had to stop occupational therapy because Medicaid would no longer pay for the services since D.C. was not making progress. When the Parent disputed this allegation, the District adopted the position of its contractor claiming that they were ethically barred from providing D.C. therapy. The District knew it was their obligation under the IDEA to provide D.C. occupational therapy as required by his IEP --- whether that meant they needed to find another contractor to provide D.C.'s therapy; whether or not Medicaid would pay for it; and whether or not D.C. was making progress but intentionally disregarded it.

22. The District's bad faith/deliberate indifference is further evidenced by the District's complete disregard of the procedural requirements for removing a related service from the IEP.

23. Occupational therapy is a "related service." *See* 20 U.S.C. §1401(26)(A).

24. The IDEA requires a *formal* reevaluation "if the [District] determines that the educational or *related services needs*, including improved academic

achievement or functional performance, of the child warrant a reevaluation." 20 U.S.C. §1414(a)(2)(A)(i) (emphasis supplied). Moreover, the IDEA requires that the formal reevaluation be considered by the IEP team before terminating a related service. 20 U.S.C. §1414(d)(4)(A)(ii)(II).

25. The District failed to conduct a formal reevaluation - or an assessment of any kind - before terminating D.C.'s occupational therapy.

26. The IDEA further requires a formal reevaluation "if the child's parent . . . requests a reevaluation." 20 U.S.C. §1414(a)(2)(A)(ii). Parent objected to terminating D.C.'s occupational therapy without a reevaluation, but the District refused to reevaluate D.C.

27. When the District refused to reevaluate, Parent secured a reevaluation recommending 120 minutes per week of occupational therapy and explaining:

Drake would benefit from direct occupational therapy services every week to address his significant sensory processing delays. Delays in sensory processing can prevent children from interacting with same age peers, decrease independence and abilities to perform ADLs, decrease confidence, increase safety concerns, and prevent more complex sensory processing, fine motor, academic, social and self-care milestones from being reached. Failure to address SPD will have a significant impact on Drake.

Direct occupational therapy services will help prevent further worsening of the condition. Occupational therapy has been shown to be beneficial as evidenced by improvements on goals, fine motor skills, ADLs, social engagement and improved safety awareness.

Drake successfully engaged in 90 minutes of evaluation following an extensive speech evaluation without concerns or contraindications. Based on testing and observation Drake has the ability to tolerate and attend to the recommended amount of time.

**OT Eval., p. 5 (July 2, 2019)**.

28. Parent provided D.C.'s occupational therapy reevaluation to the District on 8/12/19.

29. The IDEA required the IEP team to meet and consider Parent's reevaluation. *See* 20 U.S.C. §1414(c)(1)(A)(i) (must consider "evaluations and information provided by the parents of the child."); §1414(d)(4)(A)(ii)(II) (must consider "the results of any reevaluation").

30. The District refused to review and/or discuss D.C.'s need for OT after the Parent provided the independent OT evaluation he obtained indicating D.C.'s need for therapy - despite the Parent pleading for them to do so.

31. Finally, when Parent filed his Due Process Complaint with ADE challenging the District's termination of D.C.'s occupational therapy, the IDEA required the District to "stay put" – to implement D.C.'s last agreed-to IEP that included occupational therapy – until resolution of Parent's Due Process Complaint. *See* 20 U.S.C. §1415(j); *Paris Sch. Dist. v. A.H. by & through Harter*, No. 2:15-CV-02197, 2017 WL 1234151, at *10-11 (W.D. Ark. Apr. 3, 2017) (When a parent files a due process complaint challenging

an IEP team decision, the last IEP agreed to by the parent is the "then-current educational placement.").

32. The District failed and refused to provide D.C. occupational therapy while Parent's Due Process Complaint was pending.

33. The District had no rational basis for terminating D.C.'s occupational therapy.

34. As a result of the District's arbitrary decision to terminate D.C.'s occupational therapy, D.C. has regressed behaviorally which has negatively impacted his learning; increased his self inflicting injurious behavior, caused insomnia problems, and has resulted in numerous meltdowns resulting from sensory overload.

35. The HO found D.C.'s IEPs for 2017-2018, 2018-2019, and 2019-2020 were inappropriate, and the reasons the HO found these IEPs inappropriate give rise to an inference that the District knew they were inappropriate and would deny D.C. a FAPE at the time they were developed. *See* **Exhibit A, pp. 32-36**.

36. The HO also found D.C.'s IEPs violated the least restrictive environment requirement of the IDEA. *See* 20 U.S.C. §1412(a)(5). The HO found "that placement in the general education curriculum was in no way considered by the IEP team." **Exhibit A, p. 38**. This finding demonstrates

the District's deliberate indifference to D.C.'s right to be educated in the least restrictive environment.

37. Parent, (R.C.) individually, is a "person aggrieved" and has standing to pursue a §504/Title II discrimination claim based on the District's discrimination against C.C. described herein. See 29 U.S.C. §794a(a)(2) ("The remedies, procedures, and rights . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance . . . "); 42 U.S.C. § 12133 (incorporating §794a); K.F. v. Francis Howell R-III Sch. Dist., No. 4:07CV01691 ERW, 2008 WL 723751, at *7 (E.D. Mo. Mar. 17, 2008) ("This Court is persuaded by the reasoning in Blanchard and C.J.G., and finds that parents do have standing under Section 504 and the ADA as an aggrieved party in their own right.") (following Blanchard v. Morton Sch. Dist., 509 F.3d 934 (9th Cir. 2007) and C.J.G. v. Scranton Sch. Dist., 2007 WL 4269816 at *5-6 (M.D. Pa. Dec. 3, 2007)).

38. As a direct and proximate result of the District's bad faith/deliberate indifference, Parent and D.C. have incurred and will incur in the future pecuniary and non-pecuniary losses for which they should be compensated.

39. Parent and D.C. have suffered non-pecuniary losses in the form of past and future emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

40. Parents respectfully request compensatory damages for D.C.'s pecuniary and non-pecuniary losses in an amount determined by a jury after hearing all the evidence at trial.

## COUNT III

### TITLE II - COMMUNICATIONS ACCOMMODATIONS

41. In addition to the requirements of the IDEA and §504, Title II requires, among other things, that public schools provide D.C.s with disabilities an equal opportunity to participate in all school activities and that public schools ensure, through the provision of auxiliary aids and services, that communication with D.C. with disabilities is as effective as communication with D.C.s without disabilities. *See* 28 C.F.R. §§35.130, 35.160.

42. The HO found the District was aware of D.C.'s communication issues and failed to address them despite "D.C.'s inability to communicate [being] the largest impediment that D.C. has with regard to his education." **Exhibit A, p. 28**. If the District had complied with the IDEA, the HO found, "D.C.

would not have lost in excess of a year of communication potential."
**Exhibit A, p. 32**.

### COUNT IV

### DISABILITY DISCRIMINATION/RETALIATION

43.    The District engaged in disability discrimination in violation of §504/ Title II by retaliating against Parent for asserting his rights under the IDEA and §504/Title II. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005) ("Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment."); 28 CFR § 35.134 (Title II); 34 CFR §104.61 (§504 - incorporates Title IV regs); 34 CFR §100.7(e) (Title IV).

44.    Parent engaged in protected activity on his own behalf and on D.C.'s behalf by filing a Due Process Complaint and otherwise asserting his rights under the IDEA and §504/Title II, as well us Arkansas law, at IEP team meetings and at other times.

45.    Parent appeared in television interviews and made social media posts to publicize the District's disability discrimination and deliberate indifference to the requirements of the IDEA in terminating D.C.'s occupational therapy.

46. The District took adverse action against Parent for his advocacy by refusing to provide D.C. occupational therapy during "stay put" - refusing to consider Parent's reevaluation; and, after Parent prevailed on his Due Process Complaint, - refusing to implement the HO's order, and in particular, to start providing D.C. occupational therapy.

47. The District's retaliation against Parent and D.C. has continued and is ongoing. Parent has filed a Second Due Process Compliant to obtain whatever relief may be available under the IDEA. Parent reserves the right to supplement this Complaint upon resolution of Parent's Second Due Process Compliant.

48. As a direct and proximate result of the District's unlawful retaliation, Parent has incurred and will incur in the future pecuniary and non-pecuniary losses for which he should be compensated.

49. Parent has suffered non-pecuniary losses in the form of past and future emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

50. Parent respectfully requests compensatory damages for his pecuniary and non-pecuniary losses in an amount determined by a jury after hearing all the evidence at trial.

## JURY DEMAND

51. Parent demands a jury trial.

## PRAYER

WHEREFORE, Parent prays that he be awarded his attorneys' fees and costs as the prevailing party in an action or proceeding brought under the IDEA; that Parent and D.C. be awarded compensatory damages for their pecuniary and non-pecuniary losses in an amount determined by a jury; and, that Parent be awarded all other just and proper relief to which he may be entitled.

Respectfully submitted,

Theresa L. Caldwell (Ark. Bar No. 91163)
Caldwell Law Office
14 Alban Lane
Little Rock AR  72223
501-414-0434
Fax: 501-325-1502
theresa@specedattorney.com


***/s/ Theresa L. Caldwell***

Theresa L. Caldwell

*Attorney for D.C.,*
*Parent and Next Friend of R.C.*

## CERTIFICATE OF SERVICE

This will certify that a copy of the above and foregoing instrument was served upon the Defendant, Monticello School District by mailing a copy of the same to their representative listed below on this 29th day of July, 2020.

Monticello School District
Sandra Lanehart, Superintendent
935 Scogin Drive
Monticello AR 71655

                                             */s/ Theresa L. Caldwell*
                                             Theresa L. Caldwell